CORDELIA· E. DRYDEN, Executrix of C. W. H. OWINGS and JOSHUA R. DRYDEN *vs.* VIRGINIA M. OWINGS.

*Courts lean against construing legacies to be specific—Possession by testator of Stock Corresponding to Stock bequeathed generally, not sufficient to create Specific legacy—Specific property bequeathed must be accurately marked.*

A testator by his last will and testament bequeathed as follows: "I give and bequeath to Virginia M. Owings, eight thousand dollars in State of Missouri Bonds." Among the assets of the testator were found eight thousand dollars in State of Missouri Bonds, and these were the only State of Missouri Bonds owned by testator. Question was whether said legacy to Virginia M. Owings was a specific legacy. HELD:

1st. That Courts lean against construing a legacy to be specific, and have gone so far as to say that in no case ought a will be so construed unless the language imperatively requires it.

2nd. That in case of a bequest generally of stocks, or of a sum of money in stocks without further explanation and without more particularly referring to or marking the corpus of the identical stock, the fact that the testator possessed such stock at the time of the execution of the will, is not sufficient to justify the Court in declaring the legacy to be specific.

3rd. That in order to constitute a specific legacy it is necessary for the testator to identify the property bequeathed.

APPEAL from the Superior Court of Baltimore City.

C. W. H. Owings died in August, 1875, leaving a last will and testament whereby he bequeathed to Virginia M. Owings "Eight thousand Dollars in State of Missouri Bonds." Among the assets of the testator were found eight thousand dollars in State of Missouri Bonds, and these were the only State of Missouri Bonds owned by the testator. Letters testamentary upon said estate were granted to Cordelia E. Dryden, who cut from said bonds sixteen cou-

pons, each of the value of thirty dollars, and collected the money thereon as they fell due    This was an action of trover brought by the appellee against the appellants to recover the value of the coupons so cut from said bonds, the appellee claiming as specific legatee.    The defendants took four exceptions to the admissibility of evidence, which are not here inserted because not deemed essential to a proper understanding of this case, and also took a fifth exception to the rejection by the Court of their four prayers.    The first of said prayers asked the Court to instruct the jury that upon the true legal construction of the will of C. W. H. Owings, offered in evidence, the legacy to Virginia M. Owings of eight thousand dollars in State of Missouri Bonds was not a specific legacy.    The other prayers are not inserted because the question as to specific legacy presented by the first prayer was the only question considered by the Court.    The said instruction asked by the first prayer having been refused, and the verdict and judgment being against them, the defendants took this appeal.

The cause was argued before Bartol, C. J., Stewart, Miller, Grason, Alvey and Robinson, J.

*Wm. Burns Trundle,* for the appellants

The late Chancellor Johnson, in *Mayo vs. Bland,* 4 *Md. Ch. Dec.,* 484, lays down the rule as settled ; " to constitute a legacy specific, there must be a segregation of the particular property from the mass of the estate, and a specific gift of the segregated portion to the legatee." 1 *Roper on Legacies,* 192 ; 2 *Roper on Legacies,* 1251 ; 2 *Williams on Executors,* 1041, *sec.* 3.

Applying the rule to the words of the will, " $8000 in State of Missouri Bonds," it is plain that the legacy is not specific.    Had he said $8000, and no more, it would, of course, be a general pecuniary legacy, no particular $8000 being specified.    Had he said $8000 in gold, or in govern-

ment bonds, it would be no less general; no specific gold or government bonds being set apart from the mass of his estate, and specifically given.    Where then is the difference between the case last put and the bequest of $8000 in Missouri Bonds?    There is none.    If the testator meant that the legacy should be paid in Missouri Bonds, can it be said that any bonds of that kind whatever would not satisfy the bequest.    There is nothing here identifying and distinguishing any particular Missouri Bonds from all others of the same kind:  the bequest is, therefore, general.

But to go a step further, the testator had, at the time of making his will, eight Missouri Bonds, of various kinds, five of them maturing in 1877, each of the denomination of $1000, and it is said that this makes the legacy in question specific.    Conceding, *argumenti gratia*, that this fact may be shown, yet the mere coincidence between the sum given, and the amount of securities of that kind held by the testator at the date of his will does not, *per se*, render a legacy, otherwise general, specific.

The rule is very clearly stated by Mr. Roper thus:  "A legacy of a given sum of money in a fund or stock, and no more, is general, even if the testator possesses, at the date of his will, just that sum in that stock or fund."    1 *Roper on Leg.*, 213, 214;  2 *Williams on Executors*, 1047.

" To make it specific, there must be words particularly referring to, or marking the *corpus* of the identical stock he then held."    *Ibid.*

The great preponderance of authority fully sustains the correctness of the rule as stated.    The first case is that of *Purse vs. Snaplin*, 1 *Atkyns*, 414, in 1738, which was a legacy of " £5000, in South Sea annuity stock."    Held, by Lord HARDWICKE, to be general.    The next is *Bronsdon vs. Winter, Ambler*, 57, in 1745, a legacy of " £2000 capital stock in the South Sea Company."    At the time of making his will, the testator had just £2,000 in such stock.    Held:  not a specific legacy.

In *Avelyn vs. Ward,* 1 *Vesey, Sr.,* 424, in 1750, Lord HARDWICKE decided differently, but that case is not deemed to be law, and is contrary to a prior decision of Lord HARDWICKE himself, as shown by Lord THURLOW, in commenting on that case, in *Ashburner vs. Maguire,* 2 *Bro. Ch.,* 113 *marg.,* in 1786. See 1 *Roper on Leg.,* 210. There is, however, one other case which purports to follow *Avelyn vs. Ward,* namely, the case of *Jeffreys vs. Jeffreys,* 3 *Atkyns,* 120, in 1782, which was a stock legacy ; but, as shown by Mr. Roper, (p. 212,) is not now considered as authority.

The next case is *The Bishop of Peterborough vs. Mortlock,* 1 *Brown Ch.,* 565, in 1784, in which the bequest was " to Story's Hospital, £3400 in the 3 per cents." Held, by Lord THURLOW, a pecuniary and not a specific legacy. The next case is *Partridge vs. Partridge, Forrest,* 226, where the same rule is followed in a similar case.

Then comes *Sibley vs. Perry,* 7 *Vesey, Jr.,* 522–529, in 1802, in which Lord ELDON holds, "there is no case deciding that a legacy is specific, without something marking the specific thing, the very *corpus*" of the bequest—and "that he happened to have so much stock at the date of his will is *immaterial.*"

So, too, in *Webster vs. Hale,* 8 *Vesey, Jr ,* 410, in 1803, the will contained the following bequests : £8000 in the five per cent. Irish Fund, £4000 in the three per cent. Reduced Stock, £1000 in the four per cent. Reduced Stock. Held : that these were pecuniary and not specific legacies.

In *Wilson vs Brownsmith,* 9 *Vesey, Jr.,* 180, a legacy of £200 Consolidated Bank Annuities was held not specific.

In *Kerby vs. Potter,* 4 *Vesey,* 748, a legacy of £1000 out of my Reduced Bank Annuities was held pecuniary.

In the case of *Innes vs. Johnson,* 4 *Vesey,* 568, the language of the bequest was, I give £300 upon bond to A., during her life, and after her decease, all interest due on *the said bond,* together with the principal, to B. Held,

specific, upon the words *the said bond,*—referring to a particular bond, without which terms it would have been demonstrative.

In the case of *Gillaume vs. Adderley,* 15 *Vesey,* 385, 390, decided by Lord ELDON in 1808, there was a legacy of £5000 or 50,000 current rupees now vested in the company's bonds. Held, not specific. *Lambert vs. Lambert,* 11 *Vesey, Jr.,* 607 ; *Deane vs. Test,* 9 *Vesey,* 152.

Whether the legacy in question be considered as simply a general, or a demonstrative legacy, make no difference, because a " demonstrative legacy does not carry dividends of stock or interest from the testator's death." *Mullins vs. Smith,* 1 *Dr. & Sm.,* 204.

Like all other general legacies, it is due at the end of one year next after the testator's death, and bears interest from that time only. *Crain vs. Barnes,* 1 *Md. Ch. Dec.,* 151 ; *White vs. Donnell,* 3 *Md. Ch. Dec.,* 526.

The American cases follow the English cases. *Davis vs. Cain,* 1 *Iredell Eq.,* 304 ; *Tiffts vs. Porter,* 8 *N. Y. Ct. of Appeals,* 521 ; *Downing vs. Bain,* 24 *Geo.,* 372 ; *Corbin, et al. vs. Mills,* 19 *Gratt.,* 438, 468, 470.

The law on this subject is very clearly put by Mr. O'Hara in his work on the *Construction of Wills, pages* 330 to 336, and the appellants' view is fully sustained.

On page 336 he says, a bequest " of five thousand dollars in railroad bonds," is a general legacy ; and if there is any deficiency of such bonds it must be supplied out of the general assets of the estate, and cites—*Gilmer vs. Gilmer,* 42 *Ala.,* 9 ; *Corbin vs. Mills,* 19 *Gratt.,* 438.

The right to fall back upon the general assets, in case of failure or deficiency, does not exist in case of a specific legacy, as shown *supra, Chase vs. Lockerman ;* and this is why the Courts always lean in favor of holding a legacy general, rather than specific, and have laid down the rule that a legacy shall *never* be held specific, unless it is *clearly* so made by the will.    1 *Roper on Leg.,* 213 ;

*Tiffts vs. Porter,* 8 *N. Y. Ct. of Ap.,* 521 ; *Sibley vs. Perry,* 7 *Vesey, Jr.,* 529 ; 2 *Wms. on Executors,* 1160, (*7th ed.*)

The cases chiefly relied on by appellee below to show that the legacy in question is specific, are—*White vs. Winchester,* 6 *Pickering,* 48 ; *Stickney vs. Davis,* 16 *Pickering,* 19 ; *Cuthbert vs. Cuthbert,* 3 *Yeates,* 486.

In view then of all the authorities, the terms of this bequest being general and there being nothing in the will distinguishing and separating the Missouri bonds, which the testator owned, from all others of the same kind from the mass of his estate, and showing a clear intent to give those specifically, it must follow that on the face of the will this legacy is not specific.

*Thomas G. Hayes* and *John M. Carter,* for the appellee.

In determining the nature of a legacy, regard must be had to the rest of the will, as well as of the particular clause ; and if the instrument taken as a whole shows that the testator meant to give the identical property which he then owned, the bequest will be specific, although it might receive a different interpretation if considered separately. *Leading Cases in Eq.* (*W. & T. Vol. II, Part* 1, *page* 656,) and cases there cited.

The rule resorted to is the real intention of the testator. This, if it can be ascertained, is always to govern. *Norris vs. Thompson, Exec.,* 15 *N. J , Eq. R.,* 496 ; *White vs. Winchester,* 6 *Pick.,* 56.

From the face of the will it appears that on the day of its execution, the testator was "sick and weak in body;" and also, that the testator was a citizen of Maryland, and residing on said date in Baltimore City. In his then sick and weak condition, and presumed to know what property he owned, and its character and condition, can it be maintained that when he wrote the bequest of " eight thousand dollars in State of Missouri Bonds," he intended that his

executrix should sell his personal estate, or so much as might be necessary, and buy the bonds of a distant State? This must have been his intention if the legacy in question is general, and not specific. A bequest will not readily be construed as general, where such an interpretation would, when taken with the other provisions of the will, compel the executrix to dispose of property owned by the testator, and answering to that bequeathed, and then purchase property of the same kind. *Graham, et al. vs. Graham, Ex., Busbee Eq.*, 298; *Leading Cases in Eq.* (*W. & T. Vol. II, Part* 1, *page* 657.)

The bequest in question of " eight thousand dollars in State of Missouri Bonds," is coupled by the word " also," with a bequest of land which is conceded to be specific; and the mode of description and expression is exactly similar, thus showing the current of the testator's thought; and that the particular bonds in question were as completely segregrated from the rest of his estate, in the mind of testator, as was the farm in Carroll County. And in the subsequent part of the same item, he refers to the bonds and farm always together, and by the use of the single word "property;" in one line as "the property;" and afterwards as " said property;" thus showing that, in the mind of the testator, he was referring to "property" he then owned, and that then existed, and not to what after his death might have an existence. He intended to bequeath the farm he owned and the bonds he owned.

The item in the will containing the bequest in question, does not convey an absolute estate, or even an unqualified life estate in the bonds. It is the income from said property that the testator intends the appellee to get, liable to be diverted upon the re-marriage of the appellee, (the appellee being the widow of Thos. B. Owings, not of the testator.) And the testator states that the provision " is designed and intended as a full settlement of all matters of account between himself and the said appellee." It

would, therefore, seem clear that the testator intended the bequest to take effect immediately upon his death ; otherwise the re-marriage of the appellee within the year of administration would defeat the legacy entirely, and the proposed settlement of accounts between the said testator and legatee, it being the income on the very coupons in question that this appellee was to receive under the bequest.

In the residuary clause the testator uses this expression, the "remainder of my estate, effects and property." This clause is to be read in connection with the items preceding, and refers to the remainder of his estate after taking from it the previous bequest. The testator, in effect, says: after taking out of my estate the "eight thousand dollars in State of Missouri Bonds," and the other specific bequests, then the remainder I give, &c. If the clause read—the "remainder of my estate, effects and bonds," it would be clear that the testator meant the previous bequests of bonds to be those owned by him at date of his will. The word the testator used in first item in referring to the bonds, to wit: "property," is here used as if in lieu of the word "bonds." The word "remainder" seems purposely to have been used by the testator. The words "rest and residue," which are the words usually used, would be sufficient to convey the residuum of the estate; but the testator seems desirous to except from this residuum his bonds previously bequeathed, and uses the term "remainder."

ROBINSON, J., delivered the opinion of the Court.

The controversy in this case arises upon the following bequest in the will of the late C. W. H. Owings, Esq. : "I give and bequeath to Virginia M. Owings $8000 in State of Missouri Bonds."

The testator, at the time of the execution of his will, and at the time of his death, had in his possession stocks and public securities amounting to nearly $90,000, among

which were eight State of Missouri Bonds, of the value of eight thousand dollars. One year after the death of the testator, his executrix delivered to the legatee $8000 in State of Missouri bonds, but the appellee claims that the bequest is a specific legacy, and that she is therefore entitled to the interest on said bonds from the testator's death.

Were this a case of first impression, taking into consideration the fact that at the time of the execution of the will the testator had in his possession eight Missouri State bonds of the value of $1000 each, and the further fact that the will was made but a short time before his death, I should not hesitate to say he meant to give to the legatee these identical bonds, and that the legacy must, therefore, be considered specific. But the majority of the Court are of a different opinion, and I must admit that the decided cases fully sustain that opinion.

In determining this, as well as all other questions involving the construction of a will, it is admitted that the intention of the testator must prevail; but inasmuch as specific legatees are not liable to contribution in case of a deficiency of assets, and inasmuch as the legacy fails entirely if the testator parts with the property or thing specifically bequeathed, Courts lean against construing a legacy to be specific, and have gone so far as to say that in no case ought a will to be so construed, unless the language imperatively requires it. And accordingly we find Lord Eldon saying that according to well settled rules of construction, he was obliged to decide a legacy to be general, although according to his private opinion, the testator meant it to be specific.

We deem it unnecessary to examine in detail *Purse vs. Snaplin,* 1 *Atkyns,* 414; *Bronsdon vs. Winter, Ambler,* 57; *Avelyn vs. Ward,* 1 *Vesey, Sr.,* 424; *Sibley vs. Perry,* 7 *Vesey, Jr.,* 522; *Webster vs. Hale,* 8 *Vesey, Jr.,* 410;

*Gillaume vs. Adderly,* 15 *Vesey, Jr.,* 383; *Robinson vs. Addison,* 2 *Beavan,* 515; *Innes vs. Johnson,* 4 *Vesey, Jr.,* and other cases cited in argument. Nor shall we attempt the more difficult task of reconciling conflicting decisions. The general rule to be deduced from them is that in a bequest generally of stocks, or a sum of money in stocks, without further explanation, and without more particularly referring to or marking the *corpus* of the identical stock, the fact that the testator possessed such stock at the time of the execution of the will is not sufficient to justify the Court in declaring the legacy to be specific.

Thus in *Robinson vs. Addison,* 2 *Beavan,* 515, where the testator had fifteen and a half of Leeds and Liverpool Canal shares, and bequeathed five and a half shares in the Leeds and Liverpool Canal to A, and five to B, and five to C, it was held that inasmuch as there was no reference in the will showing an intention to give the particular shares which the testator had in his possession at the time, the legacy must be construed as general, and not specific. According, then, to well settled rules of construction, in order to constitute a specific legacy, it is necessary for the testator to distinguish or identify the stock or thing given by saying stock now in my possession, or now standing in my name, or some other equivalent expression, marking the *corpus* of the stock bequeathed, and showing the testator meant that identical stock, and no other should pass to the legatee.

Now, in this case, there is a general bequest of $8000 in Missouri State bonds, but there is no explanation or further expression or reference showing the testator meant to give to the legatee the identical bonds in his possession. So tested by the general rules of construction recognized and adopted by the adjudged cases, we are obliged to say the bequest to the appellee is not a specific legacy. The judgment must, therefore, be reversed, but inasmuch as

the plaintiff is not entitled to interest on the legacy until a year after the death of the testator, a new trial will not be awarded.

*Judgment reversed.*

(Decided 28th June, 1878.)