CHARLES R. GARDNER ET AL. *vs.* JOSHUA V. McNEAL ET ALS. JOSHUA V. McNEAL *vs.* CHARLES R. GARDNER ET ALS.

*Wills: revocation; inconsistent provisions; sale of property during life of testator; ademption of legacies; gifts to legatee during lifetime; misnomer in will. Religious corporations; bequests; legislature's sanction; reasonable time for obtaining——. Specific and demonstrative legacies. Intestacy; intention of testator.*

A will may be revoked as effectually by the inconsistent provisions of a subsequent will as by revocation in terms.  p. 31

Where a testator by his will bequeathed to a legatee property which he had already given him in his lifetime, the legacy is adeemed and such property forms no part of the testator's estate at the time of his death.          p. 32

A mere misnomer in a will in naming a legatee will not affect the intention of the testator where the beneficiary of the intended bounty is perfectly certain.          p. 33

A testatrix bequeathed certain of her jewelry "to the church," by which it was shown St. Ignatius' Church was intended; that church is physically part of Loyola College; *held* that such legacy was manifestly intended for the benefit of the church known as St. Ignatius' and not for the educational purposes included within the corporate powers of the college; the legacy was within the provisions of the Declaration of Rights, Art. 38, and could not become effective without the sanction of the legislature.          p. 33

In the case of bequests to religious corporations, the executor is always allowed a reasonable time within which to obtain legislative approval where such sanction is necessary.          p. 33

When under the language of a will a legacy is susceptible of being construed either as a specific or as a demonstrative legacy, Courts lean to the construction which will regard it as demonstrative.          pp. 34-35

A specific legacy is not liable to contribution in case of deficiency of assets; and fails entirely if the testator in his lifetime parts with the thing or property specifically bequeathed.
          p. 34

A demonstrative legacy is in the nature of a general legacy with a certain fund pointed out for its payment.          p. 35

A will made provisions for a legacy of $300 to be paid out of the money remaining in bank. *Held,* this created a demonstrative legacy, and if there was not sufficient money in bank, the legatee was entitled to payment out of the general assets of the estate.          p. 35

By the provisions of her will a testatrix devised to J. V. McN. "my railroad stock;" of the stock owned at the time of making her will, part was subsequently sold during her life and

the proceeds reinvested in bonds; *Held,* that the legacy was a specific one, and that the language of the bequest gave the railroad stock, that had not been sold, to J. V. McN. as her specific legatee.                    p. 36

By the subsequent sale of some of the railroad stock an ademption of that part of the legacy was effected, and the reinvestments made from the proceeds could not be construed as a specific legacy.                    p. 37

When the owner of stock delivers to another the certificates endorsed for transfer, a ratification of his act as agent in transferring the stock is to be presumed.                    p. 37

The fact that a testator did not intend to die intestate as to any of his estate does not alter the legal result of an intestacy if such is the legal effect of his will.                    p. 37

*Decided December 6th, 1911.*

Cross-appeals from the Circuit Court of Baltimore City (HEUISLER, J.).

The causes were argued together before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Rufus W. Applegarth* and *Charles T. Reifsnider,* for the appellants.

*Thomas A. Whelan* submitted a brief for the appellees.

*Washington Bowie, Jr.,* for Joshua V. McNeal, one of the appellants.

STOCKBRIDGE, J., delivered the opinion of the Court.

On July 26th, 1899, Ellen McNeal Gardner executed her will in accordance with the requirements of the statute. in the following language:

"I, Ellen McNeal Gardner, of the City, County and State of New York, being of good and sound mind, do hereby make,

declare and publish this to be my last will and testament, revoking any former wills made by me, I hereby give, devise and bequeath unto my husband, William Rodgers Gardner, all the property, of every description whatsoever, both real and personal, of which I may be possessed at the time of my death, or which I would hereafter have become possessed."

In February, 1900, William Rodgers Gardner, the sole legatee under the foregoing will died, and on June 6, 1905, Mrs. Gardner, the testator before named, executed in the manner required by law for the execution of wills, the following instrument:

"WASHINGTON, D. C., June 6th, 1905.

I, Ellen Gardner devise and bequeath to my brother, J. V. McNeal, my railroad stock and all money remaining in bank excepting the sum of three hundred dollars, which I leave to Mary Finnegan. My pearl necklace to my niece, Marie McNeal, and the pearl pin and ear-rings to my niece, Stella McNeal; my diamond rings and ear-rings to the church (St. Ignatius); my bureau silver to my friend, Mary A. Fenwick."

After the death of Mrs. Gardner which took place in July, 1910, the instrument executed by her in 1905 was found among her papers, presented to the Orphans' Court as the last will of the deceased and admitted to probate on October 4th, 1910. Subsequently the will which she had executed in 1899 was discovered, and upon its production and proof of its execution, was also admitted to probate by the Orphans' Court of Baltimore City. On December 10th, 1910, and by its order on that date the Orphans' Court directed, "that the said two instruments of writing shall be construed together as the last will and testament of the said deceased."

This presents, as the first question for determination in this case, the effect of the instrument executed by the testatrix in 1905. It did not in terms revoke the will of 1890, and in the absence of any expressed purpose of revocation, is it to be given the legal effect of a revocation? The statute

in regard to revocation of wills, Article 93, section 318, provides in substance that, "no will * * * shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same * * * unless the same be altered by some other will or codicil in writing or other writing of the devisor signed as hereinbefore said in the presence of two or more witnesses declaring the same."

It is true the instrument executed in 1905, with all the formal requisites to constitute it a will under all the requirements of the law, did not in terms revoke the will of 1899, but this is not necessary. A will may be just as effectively revoked by an inconsistent disposition of previously devised property. 30 *Am. & Eng. Ency.* (2nd ed.), p. 624; *Colvin v. Warford,* 20 Md. 357; *Hopkins Un.* v. *Pinckney,* 55 Md. 365; *Joynes* v. *Hamilton,* 98 Md. 665.

By the will of 1899 Mrs. Gardner had given her entire estate of every description to her husband; by the second instrument she gave all her railroad stock and all money in bank except $300 (which was bequeathed to Mary Finnegan) to her brother, and certain articles of personal jewelry to named friends. It appears from the agreed statement of facts that this comprised her entire estate at the time, with the exception of a few pieces of furniture and some minor articles of personal adornment. The second paper evidently intended to make a complete disposition of her property no less than the first, and the legatees being entirely different persons, the inconsistency was as great as was possible. But one conclusion can be reached, the will of 1899 was revoked by that of 1905, and was therefore without any force or effect at the time of her death, and the learned judge below was correct in his decree to this effect.

The proceedings in the case make necessary a consideration of the various legacies contained in the will of 1905.

The agreed statement shows that the articles given by the will to Marie McNeal, had been actually given to her before the death of the testatrix, and therefore constituted no part

of her estate at her death, and so far as the legacy was con-
cerned it had been anticipated by the testatrix, in a manner
which had the same effect as an ademption. *Gallagher* v.
*Martin,* 102 Md. 115. The legacies to Stella McNeal and
Mary A. Fenwick were specific legacies, and no reason
exists why the articles given these ladies should not be deliv-
ered to them by the administrators and the Circuit Court
was correct in so directing.

The legacy of "my diamond rings and earrings to the
church (St. Ignatius)," presents a different question. So
far as the articles are concerned the legacy is specific, but
St. Ignatius Church is not a body corporate. But the agreed
statement of facts embodies the following:

"That St. Ignatius Church mentioned in said will of June
6th, 1905, is situated at the corner of Calvert and Madison
streets, Baltimore, and adjoins and communicates on the south
with and is physically a part of Loyola College Building, which
said college building occupies (including said church) the entire
block on the west side of Calvert street from Madison street to
Monument street—that the rector or president of said college
is by virtue of his office the rector or pastor of said church—the
priests attached to said college being also attached to said
church and that said church and college are integral parts of
the same management—that the title to said property embrac-
ing the church and college building is vested in the Associated
Professors of Loyola College, in the City of Baltimore, a cor-
poration duly incorporated under the laws of Maryland and
that by an Act of the General Assembly of Maryland (Laws
of 1888, Chapter 208), said corporation was duly authorized to
take and receive bequests on behalf of said church;"

The Act of 1888 referred to was one to enlarge the powers
of "The Associated Professors of Loyola College in the City
of Baltimore," and as a portion of said enlarged powers the
corporation was specifically authorized for the purposes of
said church, to take, hold and receive any gift, grant, devise
or bequest, of any property real, personal and mixed as fully
and to the same extent as it is authorized to do as an educa-

tional institution. This legacy therefore presents clearly the case of misnomer of a legatee, and a mere misnomer will not operate to defeat the intent of a testatrix, where the beneficiary of the intended bounty is perfectly certain. This legacy is analogous to the one contained in the will of Melissa Baker to "the Woman's College located at the City of Lynchburg," which was held to be a valid bequest to "the Trustees of the Randolph-Macon College," in *Trinity Church v. Baker,* 91 Md. 539; and to the legacy which was sustained in *Society v. Mitchell,* 93 Md. 199; and to the devise which was held good in *Doan v. Ascension Parish,* 103 Md. 662. By the decree in this case the legacy now being considered was sustained, and the administrators were directed to make distribution of it to the Associated Professors of Loyola College. In so decreeing either the Court below had evidence before it which is not in the record, or else it fell into a partial error. The legacy was one manifestly intended for the benefit of the church known as St. Ignatius Church, not for the educational purposes included within the powers of the Associated Professors of Loyola College. It was therefore a legacy of the class coming within the provisions of Article 38 of the Declaration of Rights; and before it can be treated as valid and effectual it must receive the sanction of the General Assembly of the State. It nowhere appears in the record that this sanction has ever been given, and there is nothing in the terms of the Act of 1888 which can properly be construed as giving a sanction by anticipation to all devises or legacies which may thereafter be made to that corporation for its religious purposes. The will now under consideration was admitted to probate on the 4th October, 1910, and there has been no meeting of the General Assembly since that date; but an executor is always entitled to a reasonable time in which to obtain legislative approval, where such sanction is required. When such approval is given the legacy will become payable, and not before. Accordingly the decree below should be so far modified as to provide that the said bequest should be

distributed to the Associated Professors of Loyola College upon the production to the executor of satisfactory evidence that the sanction of the General Assembly of the State had been given to it, and not before.

With regard to the legacy to Mary Finnegan it appears that at the time when Mrs. Gardner executed her will in 1905, she had on deposit to her credit a sum of money more than sufficient to have paid this legacy, but that between that time and the time of her death, she had withdrawn from bank all, except the sum of $12—and the contention is that the legacy to Mary Finnegan was adeemed except as to said amount of $12. Whether the decree of the lower Court was correct in this regard depends upon whether the legacy in question was or was not a specific legacy. If specific, the ruling was undoubtedly correct; on the other hand, if the legacy was demonstrative, it was incorrect. To reach a satisfactory determination in this regard it is necessary to understand with precision the distinction between the different kinds of legacies. The language of the will, "I Ellen Gardner devise and bequeath to my brother James McNeal my railroad stock and all money remaining in bank excepting the sum of three hundred dollars which I leave to Mary Finnegan," shows clearly that it was the purpose of the testatrix that the three hundred dollars bequeathed to Mary Finnegan was to be paid out of moneys remaining in bank, and if the testatrix had at the time of her death a thousand dollars to her credit in bank, it would have been perfectly easy to discharge the legacy by paying over to her any $300, so to the credit of said testatrix and not otherwise disposed of. The inclination of the Courts is against "construing a legacy to be specific because specific legacies are not liable to contribution in cases of a deficiency of assets and inasmuch as the legacy fails entirely if the testator parts with the thing or property specifically bequeathed," *Dryden* v. *Owings*, 49 Md. 356; *Kunkel* v. *Macgill*, 56 Md. 120, and when under the language of a will a legacy is susceptible of being construed either as a specific or as a demonstra-

tive legacy Courts lean to the construction which will regard
it as demonstrative. A demonstrative legacy is defined in
*Kunkel* v. *Macgill, supra,* as "a legacy in the nature of a
general legacy with a certain fund pointed out for its pay-
ment," and that in our view is precisely the character of
legacy here given to Mary Finnegan; it is a bequest of $300
to be paid out of the money remaining in bank, and the fact
that there was not that amount remaining in bank at the
time of her death entitles her in addition to the $12—which
was in bank to the payment of the balance out of the general
assets belonging to the estate, if such general assets existed,
and if not, then pro rata with general legatees, if any. In
the present case there were assets, which as will be seen in a
moment, were adequate out of which to pay this balance,
and this portion of the decree of the lower Court which held
the legacy as specific, and that it had been adeemed as to
all above the sum of $12—must be reversed.

The remaining legacy which this appeal brings before us
for construction, is as follows: "I, Ellen Gardner, devise
and bequeath to my brother James V. McNeal my railroad
stock and all money remaining in bank excepting," etc. It
appears from the agreed statement of facts that the time
when Mrs. Gardner executed her will she was the owner of
12 shares of the common stock of the Baltimore and Ohio
Railroad Company, and 60 shares of the preferred stock of
the same corporation, and that she had a cash balance in
bank of $436.03. It further appears that the preferred
stock was sold about October 1st, 1909, by her brother and
agent Joshua V. McNeal, and the proceeds of that sale,
together with some of the money in bank reinvested in the
purchase of bonds of various corporations. The bequest of
the stock was undoubtedly a specific legacy. "Bonds and
shares of stock of corporations may be specifically bequeathed,
and the word "my," "in my possession," or "standing in
my name," and other like expressions referring to the corpus
of the fund have generally been relied on" as showing the
intent of the testator that the bequest of such stock was

specific. *Kunkel* v. *Macgill, supra.* The effect of the language of the testatrix is therefore, to give to her brother Joshua V. McNeal the 12 shares of the common stock of the Baltimore and Ohio Railroad as a specific legacy. With regard to the 60 shares of preferred stock the same result by no means necessarily follows. The non-existence of property at the time of the death of a testatrix which has been specifically bequeathed by will, is the familiar and almost typical form of ademption. This may result from a variety of causes, such as a gift during the lifetime of the testatrix, of the particular article which was the subject-matter of the legacy, its consumption, loss or sale, and in each of such instances the Courts have held a legacy to be adeemed. A case of almost exact parallelism with the one under consideration was in the case of the *Unitarian Society* v. *Tufts,* 151 Mass. 76; in which a testatrix by her will gave to a legatee certain railroad stocks which she subsequently sold and reinvested the proceeds, and this was held to have adeemed the legacy, the Court saying, "the general rule is that when the chattel specifically bequeathed by a testator is sold or conveyed by him during his life the legacy is adeemed," and in *Weston* v. *Johnson,* 48 Ind. 1, after the statement of the same rule, the Court adds, "if the proceeds from such sale or disposition would be substituted and permitted to pass, the effect would be to convert a specific into a general legacy." The same principle will be found stated in *Cowles* v. *Cowles,* 56 Conn. 240; and has been recognized in this State in *Brady* v. *Brady,* 78 Md. 461. In that case the testator gave to his son certain cows and farming implements, with a life estate in the same chattels to his widow. When the life estate terminated none of the cows which were in the possession of the testator when he made the will, were living, and the legacy of these animals was held to be adeemed, while in the case of the farming implements, a portion only of which had disappeared through use, the legacy was held to have been adeemed only in part. Applying these cases to the one under consideration we must hold the legacy of 12 shares of common stock to be valid, and that

of the sixty shares of preferred stock to have been adeemed, and that the reinvestments which had been made can not be substituted as specific legacy in favor of Joshua V. McNeal.

It was earnestly argued that this change of investment was made by Joshua V. McNeal, the brother of the testatrix, without any special sanction from the testatrix, and it may be without her knowledge, and that by reason of these facts, the legal result which would follow a sale of the property by the testatrix were avoided. In this view we are unable to concur. Whatever Mr. McNeal may have done was done as agent of Mrs. Gardner, and his acts as such agent were practically ratified in advance when she delivered to him the certificates of the preferred stock endorsed for transfer, and there is no suggestion or imputation that Mr. McNeal violated or in any way exceeded the powers conferred upon him, or that his acts in disposing of the stock for her, and otherwise reinvesting the proceeds, were ever in any manner disavowed by her.

The will of June 6th, 1905, did not contain any residuary clause and under the construction which we have felt compelled to put upon it, it necessarily follows, that as to a considerable portion of her estate, Mrs. Ellen M. Gardner died intestate. That she had no intent to die thus intestate is undoubtedly true, and in that respect again the present case is in exact parallel with the case of the *Unitarian Society* v. *Tufts, supra.* But that fact can not alter the legal result, and the balance of her estate after the payment of specific and demonstrative legacies is distributable to her brother, Joshua V. McNeal, and her half-brother, James H. McNeal.

The decree of the Circuit Court will therefore be affirmed in part, and reversed in part, and the case remanded, to the end that a decree may be entered in accordance with this opinion, and the administration of the estate completed accordingly.

> *Decree affirmed in part and reversed in part, and case remanded; costs to be paid out of the estate.*