JOHN J. STEVENS, trustee, *vs.* EMERY B. FISHER, trustee,
& others.

Suffolk.    Jan. 27. — Feb. 25, 1887.    C. ALLEN & HOLMES, JJ., absent.

A testatrix by her will created a fund of $20,000 from the proceeds of certain
insurance policies, with the addition of a sufficient amount "out of any moneys
belonging to my estate," to make that sum, the income of which was to be paid
to her mother for life. By the next article of the will, she gave, "out of my
estate after my said mother's decease," to her two brothers the sum of $10,000
each. The same article likewise provided that "the remainder of said principal
sum or insurance, and its increase thereon, over the sum of $20,000, as herein
provided for as aforesaid, I hereby direct my said trustees to hold for the pur-
pose of this my will;" and that at any time after the decease of her mother, on
request of the brothers, the sum of $10,000 should be paid to each absolutely;
"and if requested by the survivor of my said brothers, the full sum of twenty
thousand dollars absolutely, without condition, out of my estate, by said trus-
tees, shall be paid." By a subsequent clause "all the rest and residue" of the
estate was left to trustees, in trust to apply the income to the education, main-
tenance, and support of the two daughters of the testatrix during their minority;
and, on being married or reaching twenty-one years of age, each daughter was
to receive a certain sum out of the principal, and the income of the remainder
for life. The will contained other articles, by which a watch was to be pur-
chased by the executors "out of any funds belonging to my estate;" certain
pecuniary legacies were to be paid "out of my estate;" and the executors were
to purchase certain books "with any funds in their hands belonging to my
estate." During the life of the mother of the testatrix, some of the securities in
which the $20,000 was invested were stolen, and there was an increase in the
value of the other securities, but this was not enough to make good the loss
by the theft. *Held*, on the death of the mother, that the legacies to the brothers
were chargeable only to the $20,000 fund; and that the brothers were entitled
to the benefit in the increase of this fund.

BILL IN EQUITY, by one of two trustees under the will of
Louisa J. O'Brien, against Emery B. Fisher, the other trustee,
and in his individual capacity, and Gardner P. Fisher, brothers
of the testatrix, and Grace A. O'Brien and Màry L. O'Brien,
daughters of the testatrix, to obtain the instructions of the court
as to the construction of the will. Hearing before *Gardner*, J.,
who reserved for the consideration of the full court the following
case.

Louisa J. O'Brien died on January 22, 1873. Her will, which
was duly admitted to probate on February 17, 1873, contained
the following provisions:

Article 1 was as follows: " I direct all my just debts and all just charges upon my estate to be paid by my executors as soon as practicable."

Article 2 directed her executors to buy a gold watch " out of any funds belonging to my estate," and to give the same to her daughter Grace Augusta.

Article 5 gave five legacies of $50 each, " out of my estate."

Articles 6 and 7 were as follows:

Article 6. " I give and bequeath to my esteemed friends, John J. Stevens of said Boston and my brother Emery B. Fisher, the sum of twenty thousand dollars, out of all the policies of insurance upon the life of my late husband, William H. O'Brien, which are made payable to me, and out of all sums of money payable or coming to me under or by virtue thereof, or if insufficient then out of any moneys belonging to my estate, to have and to hold the said sum of twenty thousand dollars unto them and the survivor of them, and his heirs, executors, administrators, and assigns, but in trust, nevertheless, to collect and receive the amounts of said insurance to the extent of twenty thousand dollars, and, if insufficient as aforesaid, out of my estate as aforesaid, and to invest the net amount so collected in the manner hereinafter directed, and to hold, manage, and take care of the property in which the same may be so invested, and to collect and receive the rents and income thereof which shall accrue during the natural life of my beloved mother, Lavinia B. Fisher, and, after deducting therefrom all taxes and charges upon this trust property, and all necessary or proper expenses of executing this trust, including a reasonable compensation to said trustees for their services, to pay over the remainder of said rents and income to her, my said mother, upon her receipts or orders therefor signed by her, or unto her hands, quarter-yearly during her natural life; or in case from sickness or other cause she shall become incapable of managing her affairs, to apply the remainder of said rents and income to her individual maintenance, support, and comfort.

Article 7. " I give, devise, and bequeath out of my estate, after my said mother's decease, to the use of my two brothers, said Emery B. Fisher and Gardner B. Fisher, out of my estate, the sum of ten thousand dollars each, the issue then living of

either of them who shall have deceased in the lifetime of my said mother to take by representation the share of ten thousand dollars which would have fallen to such deceased brother if living, to the use of the surviving brother, or if he also shall have deceased in the lifetime of my mother leaving issue surviving her, then to the use of his issue then living; or if he shall have died in the lifetime of my mother leaving no issue surviving her, then to the use of my heirs at law, and to convey the same accordingly. The remainder of said principal sum or insurance, and its increase thereon over the sum of twenty thousand, as herein provided for as aforesaid, I hereby direct my said trustees to hold for the purpose of this my will, and increase the same by keeping the same well invested; but it is hereby provided, and it is my will, that at any time after the decease of my said mother, if my said brothers, or the survivor of them, shall request my said trustees in writing, desiring the full payment of the ten thousand dollars to each of them without condition, that the same shall be paid to them absolutely, and if requested by the survivor of my said brothers the full sum of twenty thousand dollars absolutely, without condition, out of my estate, by said trustees, shall be paid."

Article 8 requested the executors "with any funds in their hands belonging to my estate" to purchase of the executors of the will of her late husband such part of his library as she should designate, and directed the executors to present them to persons to be named.

Article 9 was as follows: "All the rest and residue of my estates, real, personal, or mixed, of which I may die seised or possessed or to which I may be in any way entitled at the time of my decease, I give, grant, devise, and bequeath unto John J. Stevens and Emery B. Fisher aforenamed, to have and to hold the same unto them and the survivor of them, their and his heirs and assigns, but in trust, nevertheless, to wit: to hold the same, and to manage and take care of the same, and to divide the same into two equal portions or shares, and to apportion one of said shares to each of my beloved daughters, Grace Augusta O'Brien and Mary Louisa O'Brien, and in trust to hold the said share so to be apportioned to each of my said daughters during her natural life, and to manage and take care of the same, and to collect and receive the rents and income thereof, and, after deducting

from said rents and income all taxes and assessments on this share, and all expenses of keeping the same insured and in repair, and all other necessary or proper expenses and charges incurred in the care and management of the same and in the execution of this trust, including a reasonable compensation to the trustees for their services, to apply the remainder of said rents and income, or so much thereof as said trustees shall see fit, to her education, maintenance, and support, until she shall attain the age of twenty-one years, and permit that portion of said remainder which shall not have been applied or used as aforesaid to accumulate, and add the same to said share out of which the same shall have arisen, and to invest said accumulations in the manner hereinafter directed, and to hold the property in which the same shall have been invested in the same manner, upon the same trusts, and to the same uses and for the same purposes, as the trust property to which the same is to be added as aforesaid, but in trust however upon, or at any time or times after, her attaining the age of twenty-one years or marriage, whichever shall soonest happen, to pay, transfer, and convey to her so much, not exceeding five thousand dollars in value, of said accumulations as she shall in writing require, to be at her absolute use and disposal, to advance her in life; and in trust from the time of her attaining the age of twenty-one years to hold the whole of said share so to be apportioned to her, together with said accumulations; or so much thereof as shall not have been disposed of as aforesaid, and to collect and receive the rents and income thereof which shall accrue during her natural life, and, after the like deductions as aforesaid from said rents and income, to pay over the remainder thereof to her, during her natural life, quarter-yearly into her hands, or upon her sole and separate receipts or orders therefor signed by her, and not by way of anticipation, and so as not to be liable or subject to any debts, contracts, or engagements of herself or of any husband of hers." Then followed provisions, relating to the remainder after the death of each daughter, which need not be stated. The will also appointed John J. Stevens and Emery B. Fisher executors.

On the day that the will was admitted to probate, the plaintiff and the defendant Emery B. Fisher were by the judge of probate appointed executors, which trust they accepted, qualified

for, and entered upon the duties of. On April 1, 1878, the plain-
tiff and Emery B. Fisher were by the judge of probate appointed
trustees of certain property given by said will in trust for the
benefit of Lavinia B. Fisher, mother of the testatrix, during her
life, and thereafter for other purposes; which trust they accepted,
qualified for, and entered upon the duties of.

The plaintiff and Emery B. Fisher, as such executors, realized
upon the life insurance policies named in the sixth article of the
will $19,594.64, and added thereto from the funds of the estate
of the testatrix $405.36, making $20,000, the sum in said clause
given to the plaintiff and Emery B. Fisher in trust for the use
of Lavinia B. Fisher during life, and thereafter for other pur-
poses, which the plaintiff and Emery B. Fisher as such execu-
tors invested, in their names as executors, $9512.50 thereof in
ten bonds of the city of Lowell of the par value of $1000 each,
$9500 thereof in ten bonds of the city of Cambridge of the par
value of $1000 each, $487.50 thereof in the Provident Institution
for Savings in the town of Boston, and $500 thereof in the Boston
Five Cents Savings Bank, and as such executors collected and
paid over the income thereof, in accordance with the provisions
of said will, until on or about April 1, 1878, when they made over
and delivered all of said identical securities to themselves, as
trustees above named, as the property and trust fund by said
will given them in trust for Lavinia B. Fisher for life, and there-
after for other purposes, and so made return in their first account
as such executors, which account was allowed.

On April 23, 1878, the plaintiff and Emery B. Fisher, as such
trustees, returned an inventory of said securities, so made over
and delivered to them as such trustees, into said probate court,
therein stating their value to be $23,737.50.

The plaintiff and Emery B. Fisher, as such executors and trus-
tees, have always kept said securities separate and apart; have
never sold or exchanged any of them, and have, as such trustees,
rendered into said probate court specific accounts thereof, and
of the receipts and payments of the income thereof, all of which
income, less expenses and charges, they paid to Lavinia B. Fisher
as long as she lived.

In 1880, the plaintiff and Emery B. Fisher, as such executors,
transferred and made over to themselves, as trustees under the

ninth article of said will, all the rest and residue of the property of the testatrix, cash and securities, amounting to $31,872.03, and so made return in their second account as such executors, which account has been allowed by the judge of probate, which rest and residue they have always kept separate and apart, and rendered into said probate court distinct accounts of, and of the receipts and disposition of the income therefrom, as a residuary fund, as by said ninth clause provided.

About August 9, 1884, nine of the said bonds of the city of Cambridge and five of said bonds of the city of Lowell, then constituting a part of said trust fund for the benefit of Lavinia B. Fisher for life, and thereafter for other purposes, were stolen, by which theft a loss was caused to said fund of $13,581.33. The trust fund as invested at the time of the theft amounted to $23,037.50.

Lavinia B. Fisher died on June 15, 1886, and the defendants Emery B. Fisher and Gardner B. Fisher contend that under said will, notwithstanding said theft, they are each entitled to be paid the sum of $10,000 by the plaintiff and said Emery B. Fisher, trustees. The defendants Grace Augusta O'Brien and Mary Louisa O'Brien contend that both the gift of $10,000 to Emery B. Fisher and the gift of $10,000 to Gardner B. Fisher are to be taken from said fund of $20,000 given in trust for Lavinia B. Fisher for life, and thereafter for other purposes, and that, said fund having been reduced $13,581.33 by theft, said Emery B. Fisher and Gardner B. Fisher shall each receive only one half of $6418.67, the balance remaining of said fund.

There remains of the trust fund left for the benefit of Lavinia B. Fisher during her life, and thereafter for other purposes, after the theft and diminution thereof, the sum of $9455.67.

The plaintiff and the defendant Emery B. Fisher have received no appointment from the Probate Court as trustees under the will, except that of April 1, 1878.

Demand in writing was made by Emery B. Fisher and Gardner P. Fisher for their legacies.

*A. Russ & S. Albee,* for Emery B. Fisher and Gardner P. Fisher. 1. This will is somewhat inartificially drawn, but the testatrix has expressed in language as positive and definite as could be chosen, and with some unnecessary repetition, apparently to give

force and emphasis thereto, her intention to give absolute and unconditional legacies of $10,000 each to her brothers, the defendants Emery B. and Gardner P. Fisher.

By article 6 of the will she creates a fund of $20,000 for the use of her mother during her life, but, though the legacies are coincident in amount with this fund, they are not given out of the fund.

Article 7 commences thus: " I give, devise, and bequeath out of my estate, after my said mother's decease, . . . . the sum of ten thousand dollars each," &c. Having completed the sentence in which these legacies are given, she disposes, in a new sentence, of the remainder of said principal sum or insurance, or its increase thereon, but, as though this allusion to this remainder of said principal sum might raise an implication or create an inference that the two legacies above mentioned were limited to or contingent upon the existence of said fund, she adds, " But it is hereby provided, and it is my will, that at any time after the decease of my said mother, if my said brothers, or the survivor of them, shall request my said trustees in writing, desiring the full payment of the ten thousand dollars to each of them without condition, that the same shall be paid to them absolutely;" and then, that, " if requested by the survivor of my said brothers, the full sum of twenty thousand dollars, absolutely, without condition, out of my estate, by said trustees shall be paid."

She seems to have striven, by continued iteration and the use of most emphatic language, to express her intention that this sum of $20,000 should be paid out of her estate. The words " out of my estate " were fitly chosen, and they had a definite meaning, which was distinctly in the mind of the testatrix. In article 2 she directs her executors to pay for a watch " out of any funds belonging to my estate." In article 5 she gives five legacies of $50 each " out of my estate." By article 6 she creates the fund of $20,000 for the benefit of her mother out of certain policies of insurance payable to her, but if these prove insufficient, she adds, " then out of any moneys belonging to my estate." In article 7, now under consideration, she continues the use of these words by giving these legacies " out of my estate," and declaring that the same shall be paid without condition " out of my estate." In article 8 she requests her executors, " with

any funds in their hands belonging to my estate," to purchase certain books for distribution.

The word "estate" in a will includes everything, unless restrained by particular expressions. *Turbett* v. *Turbett*, 3 Yeates, 187. *Mably* v. *Stainback*, 1 Mart. (N. C.) 75.

2. If, by implication, it could be held that these legacies were made payable out of the fund created by article 6 of the will, then these two legacies are demonstrative, and not specific.

In *Savile* v. *Blacket*, 1 P. Wms. 777, Lord Chancellor Macclesfield said: "If a legacy was given to J. S. to be paid out of such a particular debt, and there should not appear to be any such debt, or the fund fail, still the legacy ought to be paid, and the failing of the *modus* appointed for payment should not defeat the legacy itself."

In *Pawlet's case*, T. Raym. 335, the testator, by will made in 1649, gave a legacy to his niece in these words: "I do ordain and give to my dear niece F. R., second daughter of my brother, D. R., the sum of £500, which my sister, the Lady Cholmeley, hath now in her hands of mine, as by her bond made to me and my heirs appears." He died in 1669. About ten years before his death the Lady Cholmeley paid to him the £500, and whether this legacy was due was the question. It was resolved "that the legacy was due, though the security was altered; because it is a pure legacy, neither *legatum nominis* nor *legatum debiti*; and the words are only to show that he meant the legacy should be as certain to her as he could make it."

In *Rider* v. *Wager*, 2 P. Wms. 328, it is said in argument: "Where a sum certain is given out of any fund, if the testator himself in his lifetime receives it, whereby his personal estate is increased, this must be made good to the legatee out of some other part of the personal estate; but where the thing given is specific, viz. such a debt, or the residue of the said debt, and the testator himself afterwards receives in this debt, as the devise is specific, and the thing *in specie* by the act of the testator does not continue to have any subsistence, this is properly and reasonably an ademption of the legacy; and that it is a material distinction where the testator himself calls in a debt which he has devised by his will, and where the debtor, unprovoked or uncalled upon, pays it in; for in the latter case it cannot be

said to be the act of the testator, and therefore would be no ademption nor revocation of the will."

In *Cartwright* v. *Cartwright*, before Lord Bathurst in 1775, a note of which appears in the decision of *Ashburner* v. *Macguire*, 2 Bro. C. C. 114, the bequest was, "I give £1400 for which I have sold my estate this day, &c." The testator afterwards received the whole money, paid it to his banker, and drew out of his hands £1100 of that money. Lord Bathurst held this to be a legacy of quantity, and that the receiving was no ademption.

*Roberts* v. *Pocock*, 4 Ves. 150, is a case in which a testator gave several pecuniary legacies, and directed the same should be paid out of the moneys that were due to him from a person in the East Indies, upon bond for five thousand pounds. Some time after the death of the testator, the obligor in the bond died insolvent, and it appeared that he was probably insolvent at the death of the testator, and the bond could not be collected. The amount of the bond was somewhat in excess of the legacies; the Lord Chancellor decided that the legacies were to be paid out of the residue, and his opinion contains a very interesting discussion of the questions which arise in this case, and in all similar cases, as to what a testator would have done in an event that was not foreseen by him.

*Mann* v. *Copland*, 2 Madd. 223, was a case in which a legacy was decreed to be paid, though the funds out of which it was directed to be paid failed. The testator had given an annuity of ten pounds a year, and had directed that the sum of two hundred pounds, navy five per cents, should be set apart to secure the same. The testator had no navy five per cents, but the Vice Chancellor said that "there must be considered a positive intent to give this legacy; and though the mode by which the payment was to be secured fails, he is yet entitled to have it made good out of the personal estate."

*Fowler* v. *Willoughby*, 2 Sim. & Stu. 354, 358, was a case where a pecuniary legacy was directed to be paid by the sale of an estate which the testator had contracted to purchase, but which he never purchased. The Vice Chancellor decreed the legacy to be paid out of the testator's general estate, "stating that this was neither a *legatum nominis*, nor a *legatum debiti*, but a pecuniary legacy with a particular security, which in the civil

law was termed a demonstrative legacy, and that our law followed the civil law in giving effect to such a legacy, where the particular security intended by the testator happened to fail."

In *Willcox* v. *Rhodes*, 2 Russ. 452, a testator gave a number of legacies, adding, "I guarantee my estates at C. for the payment of the above legacies;" and he, in the subsequent part of his will, gave many other legacies. It was held that the first class of legacies were not specific, and, failing the estates at C., were to be borne by the general personal estate.

*Le Grice* v. *Finch*, 3 Meriv. 50, was a case in which A. by will, reciting that it was the wish of her mother and herself that five hundred pounds they had then out upon mortgage should be given to B. and her family, bequeathed the said five hundred pounds, with interest, accordingly. The testatrix at the time of making her will had the sum of five hundred pounds out on mortgage, which she afterwards called in and applied to different purposes. The mother being dead, upon the death of the testatrix without having altered or revoked her will, the question was whether this legacy was due or not. The Master of the Rolls said: "The thing given is not the mortgage, but the money. It is the said sum of £500 that she gives to her executors. What is the said sum? That sum of £500 which belonged to her and her mother, and which at a given time was out upon mortgage. Whether it remained out upon mortgage at the time of the testatrix's death, appears to me to be a matter of indifference. That circumstance is no ingredient in the gift, either by way of condition, or of inherent description. I am therefore of opinion that the legacy is due."

*Fream* v. *Dowling*, 20 Beav. 624, reported on appeal in a note to *Hodges* v. *Grant*, L. R. 4 Eq. 145, was a case in which the testator directed certain legacies to be paid out of proceeds of his real estate to be sold. He proceeded on the assumption that there would be a surplus of the proceeds of sale. It turned out that there was no surplus, but a deficiency. Sir G. J. Turner, L. J., in delivering the opinion of the Lords Justices, said: "Was it, then, his intention that, in the case of a deficiency, the legatees should lose their legacies? I think not; for in the clause defining what the residuary legatees are to take, he describes it as 'the rest, residue, and remainder of the produce of

his said real and personal estate.' I think that if legacies had been given out of personal estate, and then a residuary clause in terms similar to these had followed, the legacies would have been held to be charged on the real estate in aid of the personal estate. I am of opinion, therefore, that the deficiency in the present case is to be paid out of the personalty."

*Paget* v. *Huish*, 1 H. & M. 663, was a case where the testator gave certain annuities, followed by a declaration that they should be paid out of the rents of certain real estate. Held that the bequest of the annuities was demonstrative, and, the rents proving insufficient, the annuities were payable out of the residue of the estate.

" There is no doubt that, where a testator bequeaths a sum of money in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be held to be controlled merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund." Per Wigram, V. C., in *Dickin* v. *Edwards*, 4 Hare, 273, 276.

In the case of *Arnold* v. *Arnold*, 2 Myl. & K. 365, 374, decided by Lord Cottenham when Master of the Rolls, the testator desired that A., B., and C. might each enjoy, during life, the interest of eight hundred pounds, the principal to devolve, eventually, upon his residuary legatees. The estate was not sufficient to pay the legacies in full. It was held, upon the death of one of the tenants for life, that the surviving tenants for life were entitled to have the deficiencies in their annuities satisfied out of the released fund.

In a similar case, *Farmer* v. *Mills*, 4 Russ. 86, the testator had stated, in a codicil, that upon reflection he considered that there might not be property enough to pay the annuities given by the will, and in that event he directed that an equal deduction be made from each annuity ratably. It was held, upon the strength of the codicil, that at the death of one of the annuitants the sum released fell into the residue. Sir J. Leach, M. R., before whom the case was argued, said that, had it rested upon the will, " the residuary legatees could have taken no benefit, until the annuities were fully provided for." This remark is quoted with approval by Sir C. C. Pepys, in *Arnold* v. *Arnold, ubi supra.*

In the case of *In re Tootal's estate*, 2 Ch. D. 628, the same question arose as in *Arnold* v. *Arnold*, and was disposed of in the same way. The decision was put upon the ground, that, as the residue was given to the residuary legatee, he was not entitled to receive anything until the annuitants and legatees had been paid in full. And James, L. J., says : " To say that what is included in the residue is something else than residue, is contradicting the plain terms of the will. The residuary legatee is entitled to nothing till the annuitants have been paid in full."

" A demonstrative legacy is the bequest of a certain sum of money, with a direction that it shall be paid out of a particular fund. It differs from a specific legacy in this respect, that if the fund out of which it is payable fails for any cause, it is nevertheless entitled to come on the estate as a general legacy, and it differs from a general legacy in this, that it does not abate in that class." Per Sharswood, J., in *Armstrong's appeal*, 63 Penn. St. 312, 316.

In nearly all these cases the destruction or reduction of the fund from which legacies were payable in terms, and not by inference, such destruction or reduction occurred during the life of the testator, and with his knowledge. If the rules of law uphold such a legacy, and construe the intention of the testator so as to make it payable out of the residue of an estate, *a fortiori*, when the diminution of the fund is in consequence of an unforeseen casualty occurring after the testator's power to make his intention certain by a new provision has ceased, the court should see that his original intention is effectuated.

By a devise of all the rest and residue is meant such property as has not been specifically devised and bequeathed in the previous clauses of the will. *Levering* v. *Riggs*, 49 Md. 432.

*H. G. Parker*, for the daughters of the testatrix.

DEVENS, J. It is the contention of the brothers Emery B. Fisher and Gardner P. Fisher, that although, by the will of the testatrix, a fund of $20,000 was to be created, the income of which was to be devoted to the mother of the testatrix, who was also their own mother, during her life, and the sums of $10,000 bequeathed to each respectively are coincident in amount with the fund as originally created, and although they were not payable until the death of their mother, yet they are absolute and

unconditional legacies, to be paid out of any funds of the estate. The question arises by reason that the $20,000 fund has been depleted, and two legacies of $10,000 each cannot now be paid in full therefrom. They further contend, that although, by the ninth clause of the will, the residue of the estate was bequeathed to be held in trust for the benefit of the daughters of the testatrix, and such trust estate has been actually formed and dealt with as such during the lifetime of the mother, yet properly there can be no residue, or accurate determination of the amount thereof, until these legacies have been paid.

The fund for the benefit of the mother during life was formed, as the will provided, from the proceeds of certain insurance policies held by the testatrix on the life of her deceased husband, with the addition of a sufficient amount from the general funds of the estate to make $20,000. The executors were duly appointed, and they qualified by giving bond as trustees of this estate, as held for the use and benefit of the mother during life, and thereafter for other purposes. The executors never petitioned to be, and never were, appointed trustees of the rest and residue of the estate, but they did transfer and set apart to themselves, as trustees under the ninth clause, the remaining portion of the estate of the testatrix, and have kept the same distinct. They made return, in their second account as executors, of these funds as paid to themselves as trustees, and have subsequently rendered accounts thereof to the Probate Court, in which the disposition of the funds of this residuary estate and of the income thereof has been separately accounted for by them as such. In regard to this latter fund, the trustees have never given bond as such; but whatever might be the effect of this, if we were considering whether they were still liable upon their bond as executors, this fact does not appear to have the importance which the defendants Fisher attach to it. Nor indeed could the action or failure of action of the executors or trustees control the construction of the will. The question in the case at bar is rather what, by the will, the executors or trustees should have done in regard to the residue after the debts had been paid and after the $20,000 fund was formed, as that may bear upon the construction of the clause by which the two legacies of $10,000 were bequeathed upon the decease of the mother.

The portion of the seventh clause by which the gift is made to the two brothers, omitting the contingency of the death of one before the mother, which did not occur, would read as follows : " I give, devise, and bequeath out of my estate, after my said mother's decease, to the use of my two brothers, said Emery B. Fisher and Gardner P. Fisher, out of my estate, the sum of ten thousand dollars each." The sixth clause of the will had directed that the fund of $20,000 should be formed, and from what sources it should be formed. As it was provided that the mother should receive the income during life, and as the legacies were not payable until the decease of the mother, there is no difficulty in holding that they were payable primarily from this fund, and that the seventh clause to this extent refers to the fund directed to be formed by the sixth. Even if this is so, it is urged that, while this fund is indicated as that from which they are to be paid, if for any reason there is a failure thereof, the words "out of my estate" show that they are to be paid from any other property of the testatrix's estate.

Where, even if a legacy is charged upon a particular fund, it appears by the will that it is not to fail by reason of any failure of the fund, or its inadequacy for the purpose, the legacy is held to be demonstrative. That a legacy which is thus charged should be demonstrative, there should appear a fixed separate intent to give the money or legacy independently of the fund. The cases in which the distinction between specific and demonstrative legacies has been pointed out, and in which it has been discussed whether that in dispute was of the one or of the other character, are very numerous, both in England and in this country. Many of them have been well and carefully considered in the argument on behalf of the brothers. We do not think it would be profitable or desirable here to examine or analyze them individually. The circumstances under which all these cases arise, the language and expressions used in the wills to be construed, so differ that we could not expect to find exact similarity with the case at bar, or with any other which might be under discussion. Each must, therefore, be decided with reference to its own circumstances and the peculiar phraseology used. Whether all the cases can be reconciled or not, they all proceed upon the principle that whether a legacy is demonstrative or specific must

be decided by the intent of the testator as it appears from the will; and that, where a legacy is held to be demonstrative, a general intent is shown to have it paid without reference to the fund on which it is primarily charged. *Creed* v. *Creed*, 11 Cl. & Fin. 491. *White* v. *Winchester*, 6 Pick. 48. *Bliss* v. *American Bible Society*, 2 .Allen, 334.

While the words "out of my estate," upon which much reliance is placed, would indicate, if they stood alone, that the legacies were to be paid from the general funds of the estate, they are controlled by the other parts of the will, and by its whole general scheme.

The sums bequeathed correspond exactly with that intended to provide the mother's income, and were only to be paid at her decease. The testatrix had made it certain that this full sum would be put in trust, as her whole property was liable to make it up. The contingency that the sum might increase during her mother's life had occurred to her, and the terms in which she provides for any excess over $20,000 show that she considers that she has bequeathed the original principal to her brothers. By the latter portion of the seventh clause, she disposes of the "said principal sum or insurance, and its increase thereon over the sum of twenty thousand dollars," to the uses contemplated by other parts of the will.

It does not seem probable, that, when the whole estate was subjected to the charge of constituting the $20,000 fund from which the brothers were to be paid, the residue, which was to be the basis of a trust for the benefit of the daughters of the testatrix, was again to be subjected to a liability to make it good, should it be afterwards diminished. This is made quite clear by examining the provisions as to the trust contemplated by the ninth clause. From the income of the residue the daughters are to receive their education and maintenance during their minority, to such extent as the trustees deem reasonable, are to receive the income of their respective shares on reaching their majority, and, on attaining twenty-one years or in case of marriage, if they desire, to have marriage portions to the amount of $5000 from the principal. A fund is indicated which must have been intended to come into existence at once, or as soon as in the course of administration it could be formed,

and of which during the life of their grandmother the children were to have the benefit. If this fund is subjected to losses which may occur by reason of its liability to make good the deficiency in another fund, the whole scheme of its administration is impracticable. No trustee could determine what expenditure he could make for the education of the daughters which would be needed during the life of their grandmother, nor pay them the sums bequeathed on their majority or marriage, nor the income at their majority, all which events might occur during the life of their grandmother.

We are of opinion, therefore, that the brothers must depend upon the $20,000 fund for the payment of their legacies. A loss to this fund of $13,581.33 was caused by theft, but the fund itself had been increased during the life of the mother, by a rise in the value of the securities in which it had been invested, to $23,737.50. It is contended on behalf of the daughters, that all to which the brothers are now entitled is the difference between $13,581.33 and $20,000, and that the increase over $20,000 is to be transferred, by operation of the last portion of the seventh clause, to the other uses of the will. We cannot concur in this view. "The remainder of said principal sum or insurance, and its increase thereon," which would pass by this, is only that which is "over the sum of twenty thousand" dollars. When the $20,000 fund was released by the death of the mother from her charge for income, the first use to which it was devoted was the payment of these legacies. While the brothers must suffer by its diminution by theft, they are entitled to any increase that may have been made, this increase not causing their legacies to exceed $20,000.                    *Instructions accordingly.*