Argued September 9; reversed November 16; rehearing denied
December 7, 1937

IN RE PRESTON'S ESTATE
MARCONNIER *v.* COHAN ET AL.
(73 P. (2d) 369)

*Dan J. Malarkey*, of Portland (Robert L. Sabin, Jr., and Karl Herbring, both of Portland, on the brief), for appellants.

*Allen H. McCurtain*, of Portland (Herbert Cochran, of Tacoma, Washington, and Wm. L. Harrison, of Portland, on the brief), for respondent.

BELT, J.  This suit is to determine the proper construction of the last will and testament of Eliza Margaret Preston, who died in Portland, Oregon, on Febru-

ary 20, 1935, leaving an estate of an appraised value of $18,448.75, but which had only an approximate net value of $12,000. Eliza Margaret Preston left surviving her no children or other lineal descendants. Her nearest relatives were two brothers and a niece, who lived in the state of Washington, and a nephew Byrne Marconnier, the son of a predeceased sister, who lived in New York City.

The will, so far as material herein, provides as follows:

"First: I give and bequeath unto my niece, Patricia Lynch of Walla Walla, Washington, the sum of One Dollar ($1.00).

"Second: I give and bequeath unto my brother Martin Bernard Lynch, of Walla Walla, Washington, the sum of One Dollar ($1.00).

"Third: I give and bequeath unto Byrne Marconnier, my nephew, of New York City, the sum of $5000.00 to be paid from monies as and when received from my former husband, Charles Bliss Preston, under and by virtue of that certain agreement made and entered into by and between said Charles Bliss Preston and myself on or about November 18th, 1931, wherein and whereby said Charles Bliss Preston agreed to pay me the sum of twenty-five thousand dollars ($25,000.00), said contract being in connection with divorce proceedings instituted by me against my said former husband, Charles Bliss Preston.

"Fourth: I give and bequeath unto Eula Cavanaugh Cohan, of Portland, Oregon, all of my diamonds and other jewelry.

"Fifth: All of the rest, residue and remainder of my estate, both real, personal and mixed, of every nature and description and wheresoever situated, of which I may die seized or possessed, or in which I may have any interest at the time of my decease, I give, devise and bequeath unto Eula Cavanaugh Cohan and Frank D. Cohan, of Portland, Oregon, in equal shares; to have and to hold the same absolutely and forever and to use and enjoy and dispose of as they may see fit."

On January 14, 1936, Byrne Marconnier, named as legatee in the third paragraph of the will, filed a petition in the lower court praying that the will should be so construed as to create an absolute gift of $5,000 in his favor, entitling him to such sum from the general assets of the estate even though the proceeds of the fund specifically mentioned in such paragraph were insufficient for that purpose.

It is conceded that the testatrix had no contract with her former husband, Charles Bliss Preston, wherein the latter agreed to pay her the sum of $25,000. The record, however, does disclose a property settlement contract, dated November 14, 1931, between testatrix and her then husband, whereby a trust estate was established from which she was to receive, during her lifetime, the sum of $250 per month, plus one-third of the annual income in excess of $9,000 from certain properties in the state of Washington. It was this contract to which the testatrix undoubtedly referred in her will. It is admitted that the executors of the estate have collected only the sum of $604.05 due under such contract.

Appellants contend that the gift to Marconnier was not absolute and unconditional, but that the payment of $5,000 was contingent upon its being derived from the property settlement contract. Hence appellants assert that Marconnier is entitled to receive only the sum of $604.05 and not $5,000.

The circuit court, department of probate, entered a decree in accordance with the contentions of Marconnier, that a demonstrative legacy had been created and therefore that the legacy was a charge against the general assets of the estate. Hence this appeal.

The sole question is whether the gift is a specific or a demonstrative legacy. If it is a specific legacy, the

respondent will receive only $604.05, or the amount collected by the executors of the estate; if it is a demonstrative legacy, the respondent will receive the full sum of $5,000.

■ A demonstrative legacy is a ''gift of money or other property charged on a particular fund in such way as not to amount to a gift of the corpus of the fund, or to evidence an intent to relieve the general estate from liability in case the fund fails: *Nusly v. Curtis*, 36 Colo. 464 (85 P. 846, 7 L. R. A. (N. S.) 592, 118 Am. St. Rep. 113, 10 Ann. Cas. 1134), cited with approval in 28 R. C. L. 292.

■ As stated in *Walls v. Stewart*, 16 Pa. St. 275, a specific legacy is one ''where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, * * * and consequently liable to be adeemed by the alienation or destruction of the object''. It is a gift of a part of the decedent's estate identified and differentiated from all other parts: 28 R. C. L. 291.

■ Two elements are necessary to constitute a demonstrative legacy, viz, (1) it must appear first that the testator intended to make an unconditional gift in the nature of a general legacy; (2) the gift must be given with reference to a particular fund as a primary source of payment. It is plain that the second element exists. The vital question is: Does the legacy contain the first essential element, viz, the intention to make an absolute and unconditional gift?

The courts are in accord as to what constitutes a specific or a demonstrative legacy. The difficulty lies not in the statement of the law but rather in its application. The books are replete with cases involving the question of whether certain legacies were specific or

demonstrative and it is apparent that the decision in each case hinged upon the precise phraseology in the will. It is, therefore, idle to review cases as none of them contain language similar to that of the will under consideration.

■ Whether a bequest is specific or demonstrative depends entirely upon the intention of the testator as expressed in his will and as gleaned from the facts and circumstances surrounding its execution. No technical rule of construction should be permitted to supersede this cardinal principle. Did the testatrix herein intend to make this gift a charge upon a specific fund? Did she intend to make the gift a charge against the general assets of her estate in the event the specific fund failed? These are the vital questions.

■ If Eliza Margaret Preston had stated in her will that "I bequeath to my nephew Byrne Marconnier the sum of $5,000 to be paid from money coming to me from my former husband, Charles Bliss Preston, by virtue of a property settlement contract, and not otherwise," the bequest would undoubtedly be specific. If, however, the testatrix had said, "I bequeath to my nephew Byrne Marconnier the sum of $5,000 to be paid, if possible, from money coming to me from my former husband, Charles Bliss Preston, by virtue of a property settlement contract; otherwise out of funds belonging to my estate," it would likewise be clear that a demonstrative legacy had been created. The testatrix, in the will executed by her, did not so clearly express her intention, but we are convinced that no absolute and unconditional bequest of $5,000 was intended. Such sum was not to be paid in any event, but only "from monies as and when received from my former husband". Here was a gift which was made a charge upon a particular fund and it is believed that the testatrix never intended,

in the event such money was not received from her former husband, that the general assets of her estate should be so charged. The use of the words "as and when received" plainly denote a contingency. If it was the intention of the testatrix to make an absolute and unconditional gift of $5,000 to her nephew, reference to the money which she expected to receive from her former husband was unnecessary. Testatrix, in our opinion, intended to make a gift to her nephew of $5,000, "if" or "provided" the money with which to pay such sum was received by her estate from her former husband. She intended this gift to be a charge on a particular fund and there is nothing in the will to indicate that it was to be a charge against the general assets of her estate in the event of failure of the designated source of funds. See *Waters v. Selleck*, 201 Ind. 593 (170 N. E. 20), and cases cited in footnotes. As stated in *In re Jepson's Estate*, 181 Cal. 745 (186 P. 352):

"While it is true that a legacy is presumed to be general unless it clearly appears to be specific, especially where it is of pecuniary character, the intent of the testator necessarily controls, and where it appears that his intent was to give a particular thing or a given sum of money, not generally, but only from a specified and definitely ascertained source, the court has no choice but to give effect to that intent."

Testatrix erroneously thought she had a claim against her former husband for $25,000. Having bequeathed $5,000 to her nephew, she undoubtedly intended the balance, viz, $20,000, to go to the Cohans under the residuary clause of the will. Assuming that respondent's theory of a demonstrative legacy is correct, what would have been the result had the testatrix bequeathed $20,000 from such fund to some third per-

son? Since there remained in the estate only $10,000, if the demonstrative legacies were to be paid from the general assets, the nephew would receive only $2,000 and the other demonstrative legatees $8,000. Yet it is now contended that there was an absolute and unconditional gift of $5,000 to the respondent.

Listed in the assets of the estate is a dwelling house—the home of decedent—appraised at $11,000. The estate had cash in the sum of $1,338.18. It is plain that, under the residuary clause of the will, testatrix intended the home to go to Eula Cavanaugh Cohan and her husband. If the $5,000 bequest to the nephew is a charge against the general assets of the estate, the result will be either a forced sale of the home or a mortgage incumbrance thereon. In view of the situation of the parties and their relationship, it is difficult to believe that the testatrix ever contemplated such a result.

The intention of the testatrix is the guiding star and all other rules of construction are subordinate thereto. As stated in *Gildersleeve v. Lee,* 100 Or. 578 (198 P. 246, 36 A. L. R. 1166):

"The controlling rule in ascertaining the meaning of the will of Pearl D. Gildersleeve to which all technical rules of construction must give way is, to give effect to the true intent and meaning of the testatrix as the same may be gathered from the whole instrument; and in arriving at that intention the relation of the testatrix to the beneficiaries named in the will and the circumstances surrounding her at the time of its execution are to be taken into consideration and the will read as nearly as may be from her standpoint, giving effect, if possible, to every clause and portion of it."

The court is not unmindful that a demonstrative legacy is favored in law as against a specific legacy but, after all, it is the duty of the court to carry out the intention of the testatrix if it can be gleaned from

the language of the will itself and the facts and circumstances surrounding its execution. In the solution of such problem every word, clause and sentence of the will must be given effect. The will must be considered by its four corners in the light of the situation of the parties.

In our opinion, respondent, in urging the theory of a demonstrative legacy, fails to give significance to the words, ''to be paid from monies *as* and *when received* from my former husband''. (Italics ours.) It will not do to ignore them as testatrix, in using such words, must have had something in mind. We think they were used for the purpose of charging the bequest against a specific fund, distinct from the remainder of her property.

Eva Cavanaugh Cohan was not a blood relative of testatrix but was a niece of decedent's first husband. She had lived with decedent since a child six years of age. The love and affection that existed between decedent and Mrs. Cohan was that of a proud mother and a devoted daughter. There was every reason for testatrix to select Mrs. Cohan as the principal object of her bounty.

The judgment is reversed and the cause remanded with directions to proceed in accordance with this opinion. Neither party will recover costs or disbursements.

BEAN, C. J., and RAND and KELLY, JJ., concur.

———

LUSK, J. (dissenting). The question is whether the legacy in the third paragraph of the will is specific or demonstrative; that is to say, whether the testatrix intended the respondent, Byrne Marconnier, to have $5,000 only in the event that sufficient moneys for that purpose should be derived from the contract between

the testatrix and her former husband, Charles Bliss Preston, or whether the gift was a general one, payable at all events, the proceeds of the contract being indicated only as a convenient source of payment.

Legacies are either general or specific. A general legacy is one which does not necessitate delivering any particular thing or paying money out of any particular portion of the estate. But a specific legacy is the converse of this, or where a particular thing must be delivered, according to the terms of the bequest, or money paid out of some particular portion of the estate: 4 Schouler on Wills (6th Ed.) p. 2554, § 3057.

"A demonstrative legacy", the court said, in *Nusly v. Curtis,* 36 Colo. 464 (85 P. 846, 7 L. R. A. (N. S.) 592, 118 Am. St. Rep. 113, 10 Ann. Cas. 1134, "partakes both of the nature of a general and specific legacy. It is a gift of money or other property charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund, or to evince an intent to relieve the general estate from liability in case the fund fails. A specific bequest is subject to ademption, but such is not true of a general, or a demonstrative legacy."

The following frequently cited general statement of the law governing this subject is taken from *Walls v. Stewart,* 16 Pa. 275:

"If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific, and consequently liable to be adeemed by the alienation or destruction of the object. In this, as in other questions springing from the

construction of wills, the intention of the testator is principally to be ascertained, and it is said to be necessary that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute a legacy specific. If it be manifest there was a fixed and independent intent to give the legacy, separate and distinct from the property designated as the source of payment, the legacy will be deemed general or demonstrative, though accompanied by á direction to pay it out of a particular estate or fund specially named.''

See also 2 Page on Wills, (2d Ed.) p. 2049; *Georgia Infirmary v. Jones,* 37 Fed. 750, 753; *Nusly v. Curtis,* supra.

The courts are inclined to hold legacies to be demonstrative, rather than specific, both because the presumption is stronger that the testator intends some benefit to a legatee rather than that he intends a benefit only upon the collateral condition that he shall remain until death the owner of the property bequeathed, and because specific legacies are not liable to contribution in case a deficiency of assets: *Tift v. Porter,* 8 N. Y. 516; *Gardner v. McNeal,* 117 Md. 27 (82 Atl. 988, 40 L. R. A. (N. S.) 553, Ann. Cas. 1914A, 119).

In *Noon's Estate,* 49 Or. 286, 293 (88 P. 673, 90 P. 673), this court said:

''Specific bequests are not favored, and, unless the will clearly disclosed the testator's intent to give the thing mentioned, the donation will not be considered of that class: 18 Am. & Eng. Enc. Law (2d), 715. In assigning a reason for this legal principle, Mr. Justice Sawyer says: 'Courts have always leaned strongly against construing a legacy as specific when there is any doubt, and such a rule of construction is usually far more favorable to the legatee; for a specific legacy is liable to be adeemed, and therefore entirely lost': In re Estate of Woodworth, 31 Cal. 595.''

In 4 Schouler on Wills, (6th Ed.) p. 2556, § 3057, it is said that no direction out of what fund the legacy shall be raised will render that legacy specific unless the clear intent was to transfer all or a part of the same identical fund.

In doubtful cases, therefore, where the language of a will is susceptible of being construed either as a specific or as a demonstrative legacy, the courts lean to the construction which will regard it as demonstrative: *Gardner v. McNeal,* supra; 4 Schouler on Wills, (6th Ed.) p. 2557, § 3058.

These principles have been long entrenched in the law of wills and have been applied in a multitude of cases in this country and in England. The decisions, cannot, perhaps, in all instances be reconciled because it is frequently a matter of difficulty to determine from the language of a will whether the testator intended to make the gift an exclusive charge upon a particular fund or security, or has merely indicated such fund or security as a convenient source or mode of payment. Yet, in general, in the absence of circumstances indicating a contrary intention, the construction adopted has been that suggested by the following excerpt from *Walls v. Stewart,* supra:

"A familiar instance, given in the last book cited, (Ward on Legacies 21) is of a bequest of 10 pounds, *which J. S. owes to the testator:* when in truth J. S. does not owe any such money, the gift fails; but if he gives 10 pounds, and wills that the same be paid out of the money he has in a certain place, or out of a particular debt due to him, the devise is good, notwithstanding there should appear to be no money in the place or no such debt owing." To the same effect, see 6 A. L. R. 1370.

The distinction is pointedly illustrated in some of the more recent cases. Thus, in *Nusly v. Curtis,* supra,

the court held specific a bequest of "any and all sums of money which may at any time hereafter become due and payable to me or my estate by or under any insurance policy upon the life of my husband * * * which may have heretofore been issued". This was not, the court held, a gift "out of" or "from the proceeds of" any insurance policy, but was a gift of the entire fund itself and could not therefore be called a demonstrative legacy. But, in *Byrne v. Hume,* 86 Mich. 546 (49 N. W. 576) ; *Kramer v. Kramer,* 119 C. C. A. 482 (201 Fed. 248), and *Cascaden's Estate,* 8 Phila. (Pa.) 582, there were gifts of specific sums made payable out of the proceeds of life insurance policies, and in each instance the bequest was determined to be demonstrative.

So, in *Maxim v. Maxim,* 129 Maine 349 (152 Atl. 268, 73 A. L. R. 1244), the will recited that the testator had a certain note and mortgage in a bank "which said note and interest thereon the said Fidelity and Trust Company is to collect for me, when said money becomes due". Then followed several bequests of which this is typical:

"Out of this said amount, I give and bequeath to my beloved grandson, Clarence H. Maxim * * * the sum of two thousand dollars."

The testator collected the proceeds of the note during his lifetime and mingled them with his other property. It was held that the legacies were demonstrative and therefore not adeemed, but should be paid from any other assets of the testator's estate.

Bequests couched in language more or less similar to the language of the wills which we have quoted, were held to be demonstrative in the following cases: *Gardner v. McNeal,* supra; *Matthews v. Targarona,* 104 Md. 442, 450 (65 Atl. 60, 10 Ann. Cas. 153), and *In re Miller's Estate,* 195 N. Y. S. 253, 118 Misc. Rep. 877. Numerous

other illustrations are to be found in the exhaustive review of the English authorities contained in the opinion by Bell, J., in *Walls v. Stewart,* supra. The subject is annotated in 6 A. L. R. 1353 and 73 A. L. R. 1250.

Of the decisions cited by the appellants in support of their contention that the legacy in question is specific and therefore lost because the fund failed, some may be readily distinguished from the instant case. In *Warren v. Phebus,* 132 Kan. 816 (297 P. 657), the will directed a named person to cash a check made out in his name, and pay the proceeds to certain legatees. There was no gift of a sum of money, and the legacy was held specific in accordance with the rule stated by Mr. Thompson that a mere direction to pay a certain sum of money without words of direct gift does not constitute the gift a demonstrative legacy: Thompson on Wills, (2d Ed.) p. 573, § 483. In *Nielsen v. Jepson,* 181 Cal. 745 (186 P. 352), the court in holding a legacy specific, said that it should be noted that "the testator does not bequeath *any* sum of $12,000 or $12,000 *out* of a specific fund, but the sum of $12,000 which was invested in a specific manner". In *Stevens v. Fisher,* 144 Mass. 114 (10 N. E. 803), the conclusion that a legacy was not demonstrative was based on the fact to hold otherwise would have rendered impracticable the whole scheme of administration of another fund provided by the will. The decision in *Baker v. Baker,* 319 Ill. 320 (150 N. E. 284, 42 A. L. R. 1514), is predicated to some extent at least on the fact that the clause in dispute was closely associated with specific devises in other clauses. In the case of *Stilpen's Appeal,* 100 Maine 146 (60 Atl. 888, 4 Ann. Cas. 158), the testator, as the court pointed out, "bequeathed to Mary D. White, $600 of the $1,100 in the hands of her brothers". In the opinion, *Byrne v.*

*Hume*, supra, was referred to as a good illustration of a demonstrative legacy. As we have seen, the later Maine case of *Maxim v. Maxim*, supra, holds a bequest in language similar to that of the will under consideration to be demonstrative. *Waters v. Selleck*, 201 Ind. 593 (170 N. E. 20), is authority for the appellants' position, but the case which the court cites in support of its decision, in our opinion, fails to sustain it. In *Gelbach v. Shively*, 67 Md. 498 (10 Atl. 247), there was a legacy in this language: ''I give and bequeath, out of the portion or share of my father's estate that may come to me, $1,000 to my brother, Joseph Gelbach'', and this is followed by another legacy in identical language to the testator's sister. The court said that this language amounted to no more than a mere testamentary assignment or relinquishment of the testator's interest in his father's estate, to the extent of the legacies mentioned in favor of his brother and sister, if his interest should prove to be of that amount; that the amount necessary to pay the balance of these legacies out of the personal estate of the testator would have to be raised out of the portion given to the testator's wife and children, and that such result would contravene the intention of the testator, as manifested in the general scheme of the will, and by the terms of the bequests themselves.

The question has arisen most frequently, as an examination of the reported cases will disclose, where the fund or security designated as the source of payment was actually in existence at the time of the execution of the will, and afterwards, either through the act of the testator or otherwise, was dissipated or lost. But we apprehend that on a question of the construction of the will it makes no difference whether that be the case or whether, as here, there never was a fund, although the testatrix thought there was. Thus in *Cunliffe*

*v. Cunliffe*, 23 Week Rep. 724, where legacies were left to be paid out of the sum of 6,000 pounds, which the testatrix erroneously supposed she had coming to her from her father's estate, the court held they were demonstrative legacies and payable out of the general personal estate. And in *Mann v. Copland*, 2 Madd. 233, where the will directed a legacy to be paid from Navy Five per Cents., and the testator owned no Navy Five per Cents., there was a similar ruling, the Vice-Chancellor saying:

"At the time of the Will the Testator had no Navy Five per Cents.; and, therefore, the Legacy cannot be considered as a specific Legacy out of such Five per Cents. A specific Legacy cannot be given out of what does not exist. It is evident, however nonsensically expressed, that he meant to give 200 pounds out of his Personal Estate, to be set apart as a Fund for the payment of this Legacy. In the absence of Authorities to the contrary, I think here must be considered a positive intent to give this Legacy; and though the mode by which the payment was to be secured, fails, he is yet entitled to have it made good out of the Personal Estate."

The will under consideration contains a direct gift to the testatrix's nephew of the sum of $5,000, "to be paid from monies as and when received from my former husband, Charles Bliss Preston, under and by virtue of that certain agreement," etc. Under the precedents this would seem to be a demonstrative legacy, and we must so hold unless a contrary intention appears either from the will itself or the circumstances attending its execution. We are bound, of course, to "ascertain from the testamentary words, construed according to their natural meaning the intent of the testator, and then give effect to that intent, unless prohibited by some positive rule of law.": *In re Shepherd's Estate*, 152 Or. 15, 33

(41 P. (2d) 444, 49 P. (2d) 448). It is also to be borne in mind that the distinction between a specific and demonstrative legacy involves not merely a technical question, depending for its solution solely upon the precise language of the bequest, but a substantial inquiry respecting the intention of the testatrix, as shown by the terms of the particular legacy examined in connection with all of the other provisions of the will, *Stilphen's Appeal*, supra.

The appellant urges that the word "as" in the legacy should be construed as importing a contingency and cites *In re Blake's Estate*, 157 Cal. 448 (108 P. 287), and *Colt v. Hubbard*, 33 Conn. 281. These cases along with *Appeal of Seibert*, 13 Pa. 501, and *Fisher v. Johnson*, 38 N. J. Eq. 46, involve the question of whether or not a legacy which is given to a person "as" and "when" he reaches a certain age is vested or contingent, and apply the rule that a legacy given in that language is ordinarily contingent. But these decisions are not apposite. It is self-evident that the payment of the Marconnier legacy from the proceeds of the Preston agreement was contingent upon the existence of such proceeds. If there were no proceeds, there could be no payment from that source. This obvious deduction, however, does not lead to the construction that the Marconnier legacy was not to be paid at all if there were not sufficient moneys for that purpose available from the Preston agreement. The most that can be said is that the language is ambiguous, and, if that be so, it is the court's duty to place upon it the construction which will save, rather than destroy, the gift. To do otherwise would be violative of the established principles of construction to which we have referred.

As we have said, the will was executed on December 30, 1932, and the testatrix died February 20, 1935. The

objects of her bounty were her nephew, Byrne Marconnier of New York City, and Eula Cavanaugh Cohan and Frank D. Cohan of Portland, Oregon, the residuary legatees. A niece, Patricia Lynch, and a brother Martin Bernard Lynch, of Walla Walla, Washington, were each left $1. The relationship between Eula Cavanaugh Cohan and Mrs. Preston was one of affection and intimacy. Mrs. Cohan was a niece of William A. Erickson, the testatrix's first husband, and had lived in the home of the Ericksons from her sixth year until the testatrix's divorce, 11 years later. For the next 11 years, approximately, Mrs. Cohan lived in Marshfield and Mrs. Preston in Portland. During that period Mrs. Cohan visited the testatrix two or three times a year, and, on one occasion, during an illness, took care of her for 10 days. In 1921, Mrs. Cohan moved to Portland and from then on until the time of Mrs. Preston's death was with her almost constantly. The evidence indicates that their relations were much like that of mother and daughter.

Byrne Marconnier has been a resident of New York City since 1928. Prior to that time, he had lived in various cities of this country and the Orient. He was born in Seattle and has never lived in Portland, nor in the Pacific Northwest since 1920. He last saw Mrs. Preston in the summer of 1932, during his mother's last illness in Tacoma. At that time the testatrix was with him for the larger part of four months and, after his mother's death, Byrne Marconnier visited Mrs. Preston in Portland. Although they did not see each other frequently, it is nonetheless manifest from the testimony that Mrs. Preston was exceedingly fond of her nephew. During the last three years of her life the two corresponded by letter and telegram and on two occasions she talked to him in New York over the long-distance telephone.

The estate was appraised at $18,448.75, and consists of the following items: Money, $1,386.18; claim against Charles Bliss Preston under the settlement agreement, $17.58; automobile, $75; diamonds and other jewelry, $1,540; silverware, $818; furniture and furnishings in the decedent's home, $3,451; real estate in Portland, Oregon (decedent's home), $11,000. The net value of the estate after paying expenses of administration and inheritance taxes is not yet precisely fixed, but it is agreed by the parties to be approximately $12,000. According to a statement in appellants' brief, which is not disputed, the estate consisted of substantially the same items at the time the will was executed.

Mrs. Preston mistakenly thought that her contract of settlement with her divorced husband called for the payment to her of the sum of $25,000; in fact, there was no such provision in the agreement and the amount collected by the executors thereunder is but $604.05. Thus, if the respondent prevails in his contention, the result will be that the home (which is a part of the residue) must be sold or mortgaged in order to provide the cash for the payment to him of the $5,000 legacy.

It is argued that no such eventuality was in the mind of the testatrix; that both the relations existing between Mrs. Preston and Mrs. Cohan, on the one hand, and with her nephew, on the other, as well as evidence received at the hearing of oral declarations of the testatrix at the time the will was executed and later, manifest an intention on her part that Mrs. Cohan was to have the home. That evidence of such declarations is wholly incompetent and inadmissible, is placed beyond debate by the decisions of the court in the following cases: *Hansen v. Oregon Humane Society,* 142 Or. 104, 118 (18 P. (2d) 1036); *Holohan v. McCarthy,* 130 Or. 577, 584 (281 P. 178); *Soules v. Silver,* 118 Or. 96, 104

(245 P. 1069); *In re Estate of Hodgkin,* 110 Or. 381, 387 (221 P. 169, 233 P. 738). The language of Mr. Justice RAND in *Soules v. Silver,* supra, leaves nothing to be said on the subject:

"There was evidence offered and received tending to show oral declarations of the testator to the effect that he intended by this will to provide an income ample for the support of the plaintiff, and other declarations to the effect that she had not helped him to acquire this property in any way, and that he did not intend for her to have anything more than the net income of his real property. These declarations were wholly incompetent and inadmissible. The intention of a testator is to be gathered from the language of the will. In construing wills, the question is not what the testator meant, but what the words used mean. Wills are required to be in writing, and parol evidence cannot be adduced either to contradict, add to or explain the contents of a will. Oral declarations of the testator's intention cannot be resorted to in aid of the exposition of a will, except where a person or thing is described in terms equally applicable to two or more. Here there was no uncertainty of the persons of the devisees, nor of the thing devised. This testimony, therefore, was incompetent and inadmissible. See 1 Greenleaf on Evidence (16 ed.), § 289 et seq.,.1 Jarman on Wills (6 Am. ed.), star p. 379 et seq.; Thayer's Preliminary Treatise, 482, 483."

The court is, of course, at liberty to consider the circumstances attending the execution of the will and the relation of the testatrix to the beneficiaries named as an aid in determining her intention, but we are unable to find anything in the facts above stated or in the will itself, taken by its four corners, to overthrow the interpretation demanded by the language of the legacy. Had it been Mrs. Preston's intention to leave Mrs. Cohan and her husband the home, to the exclusion of her nephew, that purpose could have been easily ac-

complished by a specific devise of the property, just as she made a specific bequest of her diamonds and other jewelry. She was, undoubtedly, devoted to Mrs. Cohan, but she was also fond of Byrne Marconnier, who, besides, was related to her by blood.

He is the son of a deceased sister of the testatrix, and, had she died intestate, would have inherited a substantial portion of her estate by right of representation: Sections 10-101 and 10-102, Oregon Code 1930. The law favors such a construction of a will as will be advantageous to heirs at law and next of kin in preference to strangers; and the heirs of a testator cannot be disinherited upon mere conjecture, by dubious and ambiguous words or negative words, but an intention to disinherit them must be shown clearly, either by express words or by necessary implication: Thompson on Construction of Wills, § 67. Were we to take the appellants' view of the question, we would have to say that Mrs. Preston intended to cut off her nephew without a penny, if the source which she indicated for the payment of his bequest should fail. This, in my judgment, we are not permitted to do, either by the will itself, the extrinsic circumstances which may rightly be considered, or the canons of construction. It seems to me, rather, that she intended what the language of the will, properly interpreted, means, and that is a gift of $5,000 to her nephew, the proceeds of the contract being referred to merely as a primary source of payment. That failing, he is entitled to receive his legacy from the general assets of the estate.

The statement in the majority opinion that, "it is plain that under the residuary clause of the will, testatrix intended the home to go to Eula Cavanaugh Cohan and her husband," is not supported by anything in the will. As has already been stated in this opinion the tes-

tatrix made no specific bequest of her home. In Alexander, Commentaries on Wills, Vol. 2, 1002 § 674, it is said: " 'Rest' and 'residue', in the absence of language showing a contrary intent, are construed to include all the estate remaining after the payment of charges, debts, and particular legacies, including statutory allowances for the maintenance of the widow and the like." All, therefore, that the residuary clause means is that the Cohans were to have such property as remained after making the payments of the character referred to in the foregoing excerpt. If the legacy to Byrne Marconnier is specific, one might naturally conclude that the testatrix intended the Cohans to have her home as part of the residuum; but we are not justified in assuming that to have been her intention and from the premise so assumed arguing that she intended the Marconnier legacy to be limited to the proceeds of the Preston contract.

Nor is it very helpful to point to consequences that might ensue, if the will contained different provisions than those the court is called on to interpret. We must take the language of this will, as we find it, and from that language endeavor to ascertain the testamentary intention. That the task is no easy one may be freely conceded, but it seems to me, after an attentive examination of the authorities and the record in this case, that if we apply settled rules of construction to the question we are more likely to be right, than if we ignore those established aids to the solution of a difficult problem.

For the foregoing reason, I think that the decree of the circuit court should be affirmed.

ROSSMAN and BAILEY, JJ., concur in this dissent.